IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CRITICAL EDGE INC.,

Plaintiff,

v.

LADONNA MASON,

Defendant.

No.   2:23-CV-243-RWS

JURY TRIAL DEMANDED

## VERFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Critical Edge Inc. ("Critical Edge," "the Company," or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Ladonna Mason ("Mason"), respectfully shows the Court as follows:

### NATURE OF THE ACTION

1.     Critical Edge brings this action against Mason, Critical Edge's former Human Resources Specialist, for injunctive relief to seek redress for Mason's intentional and malicious conduct. Specifically, Mason misappropriated Critical Edge's trade secrets, confidential information, and sensitive employee data by unlawfully retaining and using this information after termination from Critical Edge. Mason maliciously disseminated some of this Critical Edge confidential and sensitive information via email, text messages, social media, and phone calls to

1

current and former Critical Edge employees for the purpose of damaging the Company, without authorization, and unconnected to any conceivable business purpose for the benefit of Critical Edge. Despite the Company's repeated requests, Mason has not returned the stolen Critical Edge information. Mason's ongoing unlawful retention and use of this highly sensitive information violates numerous laws, including the Defend Trade Secrets Act, the Georgia Trade Secrets Act, and the Georgia Computer Systems Protection Act, and threatens to disrupt critical aspects of the Company's operations.

2.     Mason's unlawful conduct has already caused and/or has the potential to cause tremendous damage to Critical Edge, including irreparable damage to Critical Edge's reputation and customer and employee relationships. In light of Mason's failure to return Critical Edge's property, Critical Edge seeks injunctive relief from this Court. Further, Critical Edge seeks appropriate money damages, as well as attorneys' fees that have resulted from Mason's bad faith and the unnecessary trouble and expense caused by her actions.

## JURISDICTION AND VENUE

3.     Plaintiff Critical Edge Inc. is a corporation existing under the laws of South Dakota with a principal place of business at 3245 Peachtree Parkway, D313, Suwanee, GA 30024.

4.     Defendant Ladonna Mason is a resident of Arkansas and may be served

at her last known address, 205 Pryor Street, Little Rock, Arkansas 72205.

5.     Mason served as an independent contractor for Critical Edge from May 2023 until her termination last week, on October 30, 2023.

6.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Critical Edge asserts a federal claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*. The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7.     This Court has subject matter jurisdiction over the state claims asserted pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claim.

8.     Defendant Mason is subject to the personal jurisdiction of this Court because she agreed to provide, and did provide, human resources services as an independent contractor for Critical Edge, whose principal place of business is in Suwanee, Georgia. In providing such services, Mason regularly exchanged emails and paperwork, participated in phone calls, and attended video conferences with Critical Edge employees located in Georgia to support the Company in recruiting, interviewing, on boarding, and off boarding employees. Mason was paid on a bimonthly basis and earned, solely from her services provided to Critical Edge

between May and October, 2023, approximately \$25,000. Mason therefore transacted business in Georgia.

9.      This action is based directly upon Mason's actions as an independent contractor for Critical Edge and her disloyal, tortious conduct toward Critical Edge and its confidential and proprietary information and trade secrets. Because of her actions, Mason has committed tortious injury in Georgia, and as an independent contractor offers her services to Georgia businesses, has regularly done business in Georgia, has engaged in a persistent course of conduct, and has derived substantial revenue from services rendered in Georgia.

10.     Mason is subject to the personal jurisdiction of this Court pursuant to Georgia's long arm statute, O.C.G.A. § 9-10-91, and has sufficient minimum contacts with Georgia such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

11.     Mason provided regular and systematic business services for and on behalf of Critical Edge and its employees located in Georgia and received regular payments for over six months. As a result, Mason purposely availed herself to the privilege of conducting business within Georgia, thus invoking the benefits and protections of its laws.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial

district and Mason is subject the Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

### Critical Edge's Business

13.    Based in Suwanee, Georgia, Critical Edge is an industry leader in physical security and managed service solutions, with over 40 employees located in Georgia, Arkansas, and Florida.

14.    Critical Edge's services and solutions are used to safeguard critical infrastructure (such as water treatment facilities, power plants, law enforcement municipalities, and port authorities), city and state governments (including federal agencies, prison systems, court facilities, and judicial chambers), enterprise-level facilities (such as medium to large businesses), educational campuses (including K-12 systems, colleges, and universities), and commercial complexes (such as hotels, malls, and housing complexes).

15.    Critical Edge provides turnkey solutions and services to satisfy all its customers' security needs, including video surveillance, access control, structured cabling, intercom systems, and managed services such as maintaining and troubleshooting software applications and network hardware.

16.    Because of the nature of Critical Edge's business, Critical Edge has developed and maintains valuable trade secrets, confidential information, and

sensitive customer and employee data. For example, Critical Edge has identified, developed, and maintained a large lead base of current and prospective customers for its security services and solutions.

17. Critical Edge utilizes password-protected secure cloud-based systems, networks, and computers to store and maintain much of its confidential, proprietary and trade secret information.

18. Critical Edge limits access to its secure system to certain employees and other authorized individuals. Only certain employees and other authorized individuals, for example, have access to the Company's employee compensation information. No employee is granted access to employee data beyond the scope of what they need to perform their job for Critical Edge. This information is not disclosed to the entire workforce, and most Critical Edge employees do not have authorized access to this information through the Company's networks or systems. Similarly, Critical Edge limits access of its customer and project related information only to those Critical Edge employees who need to have access to this information to perform their job for Critical Edge.

19. In exchange for the benefits that engagement with Critical Edge confers, Critical Edge requires that its employees and independent contractors that have access to Critical Edge confidential and trade secret information like Mason sign confidentiality agreements requiring them to maintain in confidence all

confidential and proprietary information of Critical Edge.

20.     Critical Edge also takes numerous steps to ensure that its employees and contractors protect the information on the Critical Edge's computer system (including Critical Edge's trade secrets and confidential information) and that its employees and contractors do not use or disclose that information. Those steps include: (a) IT policies; (b) physical security to protect against the disclosure of sensitive materials to third parties or Critical Edge employees who do not have a business need to access the materials, including securing its physical offices with badge access; and (c) IT security measures, such as password protection for all computers, two-factor authentication processes, and segregation of certain files so that only employees and contractors with a need to access the files can do so.

21.     Critical Edge also maintains policies to protect its confidential information, which prohibit unauthorized use of Critical Edge information and systems for personal gain or in competition with Critical Edge. For example, Critical Edge employees and contractors that are provided with a Company-issued device, such as a laptop, are subject to a comprehensive Company Device Policy instructing that the device is for Company business use only and expressly prohibiting the employee or contractor from using the device for personal activity, illegal activity, for purposes of harassment, or in any way that may violate the Company's confidentiality policies.

**Mason's Engagement With Critical Edge**

22.    Critical Edge engaged Mason as an independent contractor in May 2023. She held the position of Human Resources Specialist.

23.    In this role, Mason's job duties included, among other things, supporting the Company in employee hiring and retention, recruiting new employees, scheduling preliminary interviews, scheduling and participating in subsequent interviews, and managing the employee on boarding and off boarding processes, including completing the necessary paperwork and E-Verify (immigration) checks, communicating information to affected departments (e.g., managers, IT, and accounting), and assisting with employee terminations. Mason was also consulted on, and made recommendations concerning, human resource issues such as appropriate actions in connection with employee terminations.

24.    To perform her job duties, Mason had access to sensitive and proprietary information that was limited to others. Specifically, Mason had access to and relied upon a wealth of confidential and sensitive employee information, including payroll information (such as bank account numbers), basic employee information (including Social Security and driver's license numbers), employee benefits and healthcare information, employee background checks, employee medical issues (including Family and Medical Leave Act paperwork), compensation data for current and former employees (such as commission structures, salaries,

raises, and bonuses), performance review and termination records, and workplace complaints and disciplinary actions.

25.     Mason also had access to backup copies of employee documents and emails that were created in connection with several employees' termination from the Company.   Such backup files included valuable information about Critical Edge's current and prospective customers such as names, contact information, and particular needs, preferences, and characteristics that were compiled by Critical Edge through substantial efforts to identify and cultivate its customer base.

26.     Mason therefore had access to documents and compilations of information that are considered and treated as confidential information by Critical Edge and that constitute trade secrets of Critical Edge in accordance with Georgia law and federal law.

27.     On May 10, 2023, Mason entered into a Mutual Nondisclosure/Non Compete Agreement (the "Nondisclosure Agreement") with Critical Edge. A copy of the Nondisclosure Agreement is attached hereto as **Exhibit A**.

28.     The Nondisclosure Agreement contains restrictions on the disclosure and use of Critical Edge's "Proprietary Information," which is defined to include "client communications and customer lists . . . and other technical, business, financial, customer and product development plans, forecasts, strategies, business practices and information." (Ex. A at p. 1.)

9

29.   Among other restrictions, the Nondisclosure Agreement requires Mason to hold Critical Edge's Proprietary Information "in the strictest of confidence," grants Mason "use of Proprietary Information only within the scope and purpose for which it was disclosed [and] only for the benefit of the Company," and prohibits Mason from disclosing or using "Proprietary Information or any information derived therefrom to any firm, supplier, business, third party or other organization." (*Id.*)

30.   The Nondisclosure Agreement also provides that [u]pon request [Mason] shall turn over all Proprietary Information owned by [Critical Edge] and immediately surrender any and all records, files, letters, memos, . . . or other tangible material containing any such Proprietary Information and any and all copies or extracts thereof." (*Id.* at p. 2.)

31.   On May 10, 2023, Mason also signed a "Company Device Issue and Policy Acknowledgement Form" (the "Company Device Policy") when Critical Edge issued her a Dell Inspiron laptop computer. A copy of the Company Device Policy is attached hereto as **Exhibit B**.

32.   In signing the Company Device Policy, Mason acknowledged and agreed, among other things, that the Company-issued laptop computer "[is] for company business use only," and "[i]s not to be used for personal activity, illegal or dangerous activity, for purposes of harassment, or in any way that may intentionally

10

or unintentionally violate the company's confidentiality policy." (Ex. B at p. 2.)

33.    As a human resource professional, Mason was intimately familiar with Critical Edge's confidentiality policies. Specifically, Mason was involved in ensuring that confidentiality agreements were provided to certain newly hired employees as part of their on-boarding. She was also involved in reminding employees of their confidentiality obligations upon their termination.

34.    Needless to say, Mason clearly understands the Company's expectations regarding the handling of confidential information.

### Mason's Misappropriation and Misuse of Critical Edge's Confidential Information and Trade Secrets

35.    On Monday, October 30, 2023, Critical Edge informed Mason by email that her services were no longer needed and that her engagement with Critical Edge was terminated, effective immediately.

36.    In emails sent that same day, October 30, Critical Edge instructed Mason to ship her Company-issued laptop to Critical Edge's office in Jonesboro, Arkansas, provided Mason with a prepaid, FedEx shipping label, and offered to reimburse her for reasonable out of pocket expenses in returning the laptop and other equipment to the Company.

37.    Mason responded by email on October 30 and refused to immediately return the Company's laptop computer and equipment. Mason stated "I have

retained an attorney. I will bring the equipment to Court with me."

38.    Critical Edge then reminded Mason that "[y]ou are no longer a vendor providing services, therefore, the property that the company loaned you needs to be returned. If you are unable to ship it or take it to [Critical Edge's] office, we will arrange to have someone come pick it up or meet you at an exchange location."

39.    Mason responded by email and again refused to comply, stating "[t]hat's for a Judge to decide."

40.    Critical Edge disabled Mason's ability to log in and access the Company-issued laptop and the Company's network and internal file systems on October 30, 2023.

41.    Mason performed no work for the Company after October 30, 2023. She received no work assignments after that date, and she had no need to access any Critical Edge files or information after that date.

42.    Critical Edge has learned, however, that Mason unlawfully retained the Company's confidential, trade secret, and sensitive information after her termination and is maliciously disseminating some of this information via email, text messages, social media, and phone calls to numerous current and former employees of Critical Edge with the intent to damage the Company.

43.    For example, after her termination on October 30, 3023, Mason sent text messages to a new employee at Critical Edge, who was hired as a Regional

Manager. Mason's text messages attached a document containing sensitive compensation and commission structure information for a former employee and stated "[p]roof there's a commission structure, they just didn't give it to you."

44.    In addition, via email and LinkedIn messages on October 30, 2023, Mason sent Critical Edge's former Sales Director a copy of her complete employee file, including confidential correspondence among Company executives. In follow-up phone calls with the former Sales Director, Mason stated that she has contacted and intends to similarly contact numerous current and former employees and has even contacted employee spouses. Mason stated that she has a list of Critical Edge's current and previous customers and intends to send information to all such customers in Arkansas and Georgia.

45.    Consistent with her threats, over the last several days, Mason sent many current and former employees of Critical Edge a copy of their entire employment files, including an employee in Texas who was terminated for performance issues. Mason falsely told the ex-employee in Texas that she was fired for other reasons in an attempt to disparage the Company. Mason has also contacted the Secretary of State and each individual city and county government in which Critical Edge has offices.

46.    Further, Mason has sent harassing text messages to various Critical Edge personnel since her termination, including Critical Edge's Chief Technology

Officer, Operations Manager, and Owner. Several of these text messages included threats of violence against Mason's supervisor, such as "If you want your CFO in one piece, I think I need to go back [to work under a different supervisor]," "I'm done with this [b***] . . . She wants a fight, she's about to get one," and "She thinks she's a bully, she's about to meet [one]."

47.    Upon information and belief, Mason has also contacted governmental agencies such as the Occupational Safety and Health Administration and the Department of Transportation to make false reports about the Company.

48.    Because Mason's access to the Company's laptop and network was disabled the morning of October 30, 2023, it is clear that Mason has unlawfully retained Critical Edge's confidential, trade secret, and sensitive information on one or more personal computers or storage devices. Critical Edge has no means to access or control the information and data retained and possessed by Mason. By sending documents and information from non-Critical Edge computers or devices, Mason is able to use and disclose Critical Edge's confidential, trade secret, and sensitive information without her activities being visible to Critical Edge.

49.    If a competitor obtained accessed to the confidential information and trade secrets in Mason's possession, such access would pose a substantial and irreparable risk to Critical Edge's business.

50.    Upon information and belief, Mason continues to possess the laptop

14

computer issued to her by Critical Edge in May 2023.

## COUNT I
### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act
### (18 U.S.C. §§ 1836 *et seq.*)

51.     Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     The confidential, proprietary, and trade secret information of Critical Edge retained by Mason since her termination constitute trade secrets as that term is defined in 18 U.S.C. § 1839(3) that are owned by Critical Edge.

53.     Critical Edge does business throughout the country, and Critical Edge's confidential, proprietary, and trade secret information, including the information and files that Mason took, relate to products and services used, sold, shipped, and ordered in, or intended to be used, sold, shipped, or ordered in, interstate or foreign commerce, as alleged above.

54.     Critical Edge has taken reasonable measures to keep such information secret and confidential.

55.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

56.     In violation of Critical Edge's rights, Mason has misappropriated or is

threatening to misappropriate the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein, including by retaining this information under these circumstances. Mason was not authorized to access or use any Company information or documents for any reason after she was notified of her termination on October 30, 2023.

57.     Mason's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

58.     If Mason is not enjoined, Mason will continue to misappropriate, disclose, and use or threaten to misappropriate, disclose and use, for her own benefit and to Critical Edge's detriment, Critical Edge's trade secrets.

59.     As the direct and proximate result of Mason's conduct, Critical Edge has suffered and, if Mason's conduct is not enjoined, will continue to suffer, irreparable injury.

60.     Because Critical Edge's remedy at law is inadequate, Critical Edge seeks temporary, preliminary, and permanent injunctive relief to protect its confidential, proprietary, and trade secret information and other legitimate business interests. Critical Edge's business is reliant on its business reputation and ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

## COUNT II
## Misappropriation of Trade Secrets Under the Georgia Trade Secrets Act
### (O.C.G.A. §§ 10-1-760 *et seq.*)

61.     Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     The confidential, proprietary, and trade secret information of Critical Edge retained by Mason since her termination constitute trade secrets as that term is defined in O.C.G.A. § 10-1-761(4) that are owned by Critical Edge.

63.     Critical Edge has taken reasonable measures to keep such information secret and confidential.

64.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

65.     In violation of Critical Edge's rights, Mason has misappropriated or is threatening to misappropriate the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein, including by retaining this information under these circumstances. Mason was not authorized to access or use any Company information or documents for any reason after she was notified of her termination on October 30, 2023.

66.     Mason's misappropriation of the confidential, proprietary, and trade

17

secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

67.   If Mason is not enjoined, Mason will continue to misappropriate, disclose, and use or threaten to misappropriate, disclose, and use, for her own benefit and to Critical Edge's detriment, Critical Edge's trade secrets.

68.   As the direct and proximate result of Mason's conduct, Critical Edge has suffered and, if Mason's conduct is not enjoined, will continue to suffer, irreparable injury.

69.   Because Critical Edge's remedy at law is inadequate, Critical Edge seeks temporary, preliminary, and permanent injunctive relief to protect its confidential, proprietary, and trade secret information and other legitimate business interests. Critical Edge's business is reliant on its business reputation and ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

## COUNT III
### Tortious Interference

70.   Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

71.   Mason has acted improperly and without privilege in her dealings with persons with whom Critical Edge engages in employment relations.

72.     Among her misconduct, Mason has encouraged, assisted, and/or persuaded Critical Edge employees to resign from employment by, among other things, misusing Critical Edge's trade secrets, confidential information, and sensitive employee data (including personally identifiable information), thus interfering with Critical Edge's employment relations with them.

73.     Mason has also wrongfully induced Critical Edge's existing and prospective customers to discontinue or detrimentally alter their contractual or business relationships with Critical Edge.

74.     Critical Edge has valid and binding contracts with many of its customers.

75.     Mason has knowledge of these contracts.

76.     Mason intentionally and improperly interfered with existing and prospective business relationships of Critical Edge with customers by disclosing and using Critical Edge's trade secrets and/or other confidential and proprietary information to induce a breach, termination, or reduction in the customers' contractual and business arrangements with Critical Edge.

77.     Mason's tortious interferences with Critical Edge's employment and contractual relationships are without privilege or legal justification and are being conducted maliciously with the intent to injure Critical Edge.

78.     Critical Edge has been damaged as a direct and proximate cause of

Mason's tortious interference with Critical Edge's employment and contractual relations.

79.    Critical Edge has suffered and will continue to suffer irreparable harm from these tortious actions so as to entitle it to preliminary and permanent injunctive relief, and damages in an amount to be proven at trial.

**COUNT IV**
**Violations of the Georgia Computer Systems Protection Act**
**(O.C.G.A. § 16-9-90 *et seq.*)**

80.    Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

81.    Mason's actions in accessing Critical Edge's trade secret, confidential information and employment data and transferring Critical Edge files to a non-Critical Edge computer or storage device, all for reasons she knew were not authorized, constituted computer theft, computer trespass, and computer invasion of privacy as those terms are defined by O.C.G.A. § 16-9-93 (a), (b), and (c).

82.    Mason used Critical Edge's laptop computer and computer network with knowledge that such use was without authority and with the intention of taking and appropriating property of Critical Edge, obtaining the property by deceitful means or artful practice, and converting the property to her use in violation of her known legal obligation to make a specified application or disposition of such property.

83.     Mason used Critical Edge's laptop computer and computer network with knowledge that such use was without authority and with the intention of deleting or removing, either temporarily or permanently, Critical Edge's computer program data, obstructing, interrupting, or interfering with the use of Critical Edge's computer programs or data, altering, damaging, or in any way causing the malfunction of the computers, computer network, or computer programs belonging to Critical Edge.

84.     Mased used Critical Edge's laptop computer and computer network with the intention of examining employment, medical, salary, credit, or any other financial or personal data relating to Critical Edge's current and former employees with knowledge that such examination was without authority.

85.     Mason's actions exceeded her authorization to use Critical Edge's laptop, computer systems, and networks, as set forth in her Nondisclosure Agreement and in Critical Edge's Company Device Policy.

86.     Mason was only authorized to use Critical Edge's laptop and computer system for company business purposes and was prohibited from using the laptop, system, or the data contained therein for her own purposes.

87.     When Mason engaged in the transfer of confidential Critical Edge information and employment data to a non-Critical Edge computer or storage device, she ceased being an agent of Critical Edge and acted for her own benefit.

88.     When Mason accessed Critical Edge files and data after her termination on October 30, 2023, she did so without authorization.

**COUNT V**
**Conversion**

89.     Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     Critical Edge has ownership interests over the company-issued laptop computer that it allowed Mason to use for the limited purposes of performing work-related tasks during her engagement and for the benefit of the Company.

91.     Critical Edge also owns the non-trade secret documents, records, and files that Mason possesses.

92.     Critical Edge has an immediate right to possession of the laptop computer. Mason no longer works as an independent consultant for Critical Edge and is not authorized by Critical Edge to continue to possess a Critical Edge-issued computer.

93.     Critical Edge also has an immediate right to possession of its non-trade secret tangible, intangible, and intellectual property that Mason continues to possess.

94.     Critical Edge has demanded return of its non-trade secret property.

95.     Mason has not returned Critical Edge's property to Critical Edge, and she has not informed Critical Edge that she intends to do so.

96.    The property owned by Critical Edge and in Mason's possession has substantial value.

97.    Critical Edge is entitled to injunctive relief requiring the return of its property, including the return of the Critical Edge-issued laptop computer, as well as any appropriate monetary damages.

## COUNT VI
**Injunctive Relief**

98.    Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

99.    Despite Critical Edge's entitlement to recovery of those damages based on Mason's past conduct, the threat of Mason's continued wrongful misappropriation, retention and use of Critical Edge's confidential information and trade secrets, and other concerted acts of wrongdoing threaten the business of Critical Edge.

100.   If Mason's continued wrongful conduct is not immediately enjoined, then Critical Edge will suffer immediate and irreparable harm for which no adequate remedy exists at law.

101.   Critical Edge is entitled to temporary, preliminary, and permanent injunctive relief enjoining and prohibiting Mason, and anyone with knowledge of the injunction, from using or failing to return to Critical Edge all of Critical Edge's

property and trade secrets.

## COUNT VII
### Punitive Damages

102.   Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

103.   The tortious conduct described above was committed by Mason intentionally, willfully, maliciously, wantonly, and with utter disregard to the consequences to Critical Edge.

104.   In addition to full compensatory damages and all other relief sought herein, Critical Edge is entitled to an award of punitive damages against Mason in an amount to be determined by the enlightened conscience of the jury sufficient to deter Mason from engaging in such conduct in the future.

## COUNT VIII
### Attorneys' Fees

105.   Plaintiff incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

106.   Plaintiff is entitled to an award of its attorneys' fees and expenses of litigation from Defendant pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

107.   Mason's willful and malicious misappropriation of Critical Edge's

24

trade secrets further entitles Critical Edge to recover its attorneys' fees and costs pursuant to O.C.G.A. § 10-1-764.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Critical Edge Inc. respectfully requests that the Court find in its favor and against Defendant Ladonna Mason, and that the Court grant Plaintiff the following relief:

(a)     A temporary restraining order, preliminary injunction, and permanent injunction for the following relief:

    (i)     requiring Mason to return to Critical Edge all confidential, proprietary and/or trade secret information belonging to Critical Edge that is still within her possession, custody, or control;

    (ii)     requiring Mason to return to Critical Edge the Critical Edge-issued laptop computer in her possession, custody, or control;

    (iii)     requiring Mason to make available for inspection and imaging any and all computers, smartphones, external storage devices, or personal data devices on which she accessed and/or retained

25

Critical Edge's confidential information or trade secrets, as well as any and all cloud-based file management accounts, email accounts, or other devices or accounts on which Critical Edge's information could reside;

(iv) the enjoinment of Mason from using, accessing, or disclosing any of Critical Edge's confidential, proprietary, and/or trade secret information; and

(v) require that Mason set forth under oath that she has identified and returned all Critical Edge confidential information and trade secrets in her possession and identify with specificity the names of the individuals or entities (governmental or private) that she has made any disclosures of Critical Edge's confidential or trade secret information.

(b) Actual, compensatory, and exemplary damages in an amount to be determined at trial.

(c) Prejudgment interest and post-judgment interest against Mason at the maximum rate permitted under applicable law.

(d) Awarding costs and reasonable attorneys' fees incurred by Critical Edge as permitted by statute.

(e) An award of punitive damages against Mason in an amount to be

26

determined by the enlightened conscience of the jury to deter the her from engaging in similar willful, wanton, malicious, tortious conduct in the future.

(f)     Such other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 7, 2023.          Respectfully submitted,

_/s/ Coby S. Nixon_
Steven J. Whitehead
Georgia Bar No. 755480
swhitehead@taylorenglish.com
Coby S. Nixon
Georgia Bar No. 545005
cnixon@taylorenglish.com

**TAYLOR ENGLISH DUMA, LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Phone: (770) 434-6868
Facsimile: (770) 434-7376

*Attorneys for Plaintiff Critical Edge Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared

in Times New Roman, 14 point font, in compliance with Local Rule 5.1C.


*/s/ Coby S. Nixon*
Coby S. Nixon
Georgia Bar No. 545005
cnixon@taylorenglish.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CRITICAL EDGE INC.,

    Plaintiff,

    v.

LADONNA MASON,

    Defendant.

No.

JURY TRIAL DEMANDED

## **VERIFICATION**

Personally appeared before me the undersigned officer duly authorized to administer oaths, Michael Allsup, Chief Executive Officer of Critical Edge Inc. who, after being duly sworn, deposes and states that the facts contained within the foregoing VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES are true and correct.

Michael Allsup

Sworn to and subscribed before me, this ⎣ day of November 2023.

_____
Notary Public

_____
My Commission Expires
10-26-2028

ANDREA D MCGOWAN
NOTARY PUBLIC -STATE OF ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES 10-26-2028
COMMISSION # 12705830